UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LYNNEL GOMES, as Natural Guardian                :
on behalf of Christopher G. Reiner,
                                                 :        08 Civ. 10674 (AJP)
                    Plaintiff,
                                                 :        **OPINION AND ORDER**
        -against-
                                                 :
MICHAEL J. ASTRUE, Commissioner of
Social Security,                                 :

                    Defendant.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

                Represented by counsel (the Partnership for Children's Rights), plaintiff Lynnel

Gomes brings this action on behalf of her minor child, C.R. ("Christopher"), pursuant to § 205(g)

of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the

Commissioner of Social Security ("the Commissioner") to deny Christopher Supplemental Security

Income benefits.  (Dkt. No. 2: Complaint.)  The parties have cross-moved for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 11: Gomes Notice of Motion; Dkt. No. 13:

Gov't Notice of Motion.)  The parties have consented to decision of this case by a Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 9.)

                For the reasons set forth below, Gomes' motion for judgment on the pleadings is

<u>DENIED</u> and the Commissioner's motion for judgment on the pleadings is <u>GRANTED</u>.

# FACTS

## Procedural Background

On September 28, 2006, plaintiff Lynnel Gomes, on behalf of her then ten year old son, Christopher, filed an application for Social Security Supplemental Security Income ("SSI") benefits based upon a claim of attention deficit hyperactivity disorder ("ADHD") and speech and language delays. (See Dkt. No. 6: Administrative Record filed by the Commissioner ["R."] 26.) The application was denied on January 29, 2007. (R. 30-33.) At plaintiff's request, an administrative law judge ("ALJ") held a hearing on April 1, 2008. (See R. 35-48, 57-77.) Gomes and Christopher appeared and testified at the hearing, represented by counsel. (R. 50-59.) On April 24, 2008, the ALJ issued his written decision finding that Christopher was not disabled. (R. 4-20.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on November 7, 2008. (R. 1-3.)

## Hearing Before the ALJ

On April 8, 2008, ALJ Mark Hecht held a hearing on Lynnel Gomes' SSI application. (R. 57-77.) Prior to the hearing, Gomes' counsel wrote a seven page single spaced letter to the ALJ and enclosed thirteen exhibits for the hearing. (R. 50-56.) Gomes and her son Christopher testified at the hearing, represented by counsel. (R. 50-59.) Christopher was born on November 22, 1996, and was eleven years old and in sixth grade at the time of the hearing. (R. 52, 61, 68, 73.)

**Lynell Gomes' Testimony**

Lynell Gomes testified that Christopher did not learn to feed himself or walk until he was eighteen months old.  (R. 62.)  At the time, Gomes did not seek medical help for those issues.  (R. 62.)  Gomes testified that when Christopher started first grade, his teacher told her that Christopher had speech and writing problems.  (R. 63.) Gomes testified that the Board of Education evaluated Christopher and recommended that he receive speech and language therapy, which was ongoing at the time of the hearing.  (R. 63-64.)  Gomes had not seen improvement in the five years that Christopher had been receiving speech therapy; Christopher still stuttered.  (R. 64.)  In a "Function Report" completed by Gomes on October 17, 2006, however, she reported that Christopher's ability communicate was not limited.  (R. 80, 83.)

Gomes testified that Christopher is "agitated,"  "moody" and unable to "do things on his own."  (R. 65.)  Gomes described Christopher as "very loud," and said that "[h]e's all over the place."  (R. 93.)  She said that he cannot do his homework, help with housework or fold his clothes without assistance.  (R. 65; see also R. 87.)  Gomes said that she has to wake him up multiple times in the morning before he would get out of bed (R. 73), and she has to remind him several times to brush his teeth or shower (R. 74-75).

Gomes testified that the amount of time Christopher can spend focused on an activity is "[n]ot long," and that he focused best when playing video games, which he could do for up to thirty minutes.  (R. 67-68.)  Gomes stated that Christopher "doesn't like to stay still too long" and that the only time he sits still is when playing video games.  (R. 71, 93.)  Gomes said that

Christopher does not focus and is "always somewhere else," and is "spaced out." (R. 74.)  In the October 2006 Function Report, Gomes reported that Christopher's ability to pay attention and stick with a task was limited, and that he does not keep busy on his own or finish things he starts.  (R. 80, 88.)

Gomes noted that Christopher has "lots of friends" in the neighborhood who he gets along with well, although they sometimes argue.  (R. 68.)  She said that Christopher argues with his fourteen year old sister "all the time," but that they get along.  (R. 66-67.)  In the October 2006 Function Report, Gomes reported that Christopher's impairments affect his behavior with other people, but then also reported that he has friends his own age, can make new friends, and generally gets along with teachers and other adults.  (R. 80, 86.)

Gomes testified that Christopher was briefly on the medication Concerta and that his doctor raised his original eighteen milligram dosage to twenty-seven milligrams.  (R. 64.)  Gomes did not think the medication helped, but said the doctors were "going to boost it up higher" but she relapsed into drug use and stopped taking Christopher to the doctor.  (R. 65.)  Gomes "underst[ood]" that Christopher "needs to be on medication," and said that he had an appointment to see a psychiatrist and resume therapy.  (R. 65-66.)

When asked about Christopher's physical health, Gomes said that he has a "bicuspid heart valve," for which he saw a doctor once a year.  (R. 68.)  Because of this condition, Christopher tires easily during physical activity.  (R. 68.)  Gomes said that Christopher's difficulties in physical activity are compounded by his asthma, which he has had since he was six years old.  (R. 68.)

Gomes said that Christopher takes asthma medication as needed, and that he has gone to the emergency room for his asthma attacks.  (R. 68-69.)  Nevertheless, Christopher does not have any difficulty sitting, standing, walking or running.  (R. 71.)  Gomes also testified that Christopher has headaches "[q]uite often" and misses school because of them.  (R. 68, 70.)  She gives him Tylenol and Motrin for the headaches.  (R. 70.)  The doctors have not found any cause for the headaches. (R. 70-71.)  In the October 2006 Function Report, Gomes reported that Christopher's physical abilities were not limited.  (R. 80, 85.)

**Christopher's Testimony**

In response to ALJ Hecht's questions about school, Christopher testified that he has friends there, naming several of them. (R. 72.)  Christopher indicated that he often had difficulty understanding his teacher, and that he sometimes "just stare[s] in space" when his teacher is talking. (R. 72.)  Christopher stated that he "[k]ind of" pays attention in school, but sometimes daydreams. (R. 76.)  When asked by his attorney to add 100 and 57, Christopher's response was "52." (R. 76.) He spelled the word "extreme" correctly.  (R. 77.)

**Education and Non-Medical Evidence**

On December 23, 2004, when he was in third grade, Christopher received a psychological evaluation on the recommendation of his speech therapist, who believed that speech therapy was not "adequately addressing his academic delays."  (R. 140.)  The evaluator asked Christopher to read aloud, but Christopher had difficulty decoding words and gave up easily, saying there were "[t]oo many hard words."  (R. 141.)  He also "gave up easily" in math.  (R. 141.)  When

the evaluator urged him to try two problems, he answered "4 minus 2" correctly, but answered "2 plus 3 plus 1 plus 4" incorrectly.  (R. 141-42.)  Christopher correctly provided his name and birthday, but could not provide his address or the name of the current president.  (R. 142.)  As part of the psychological evaluation, Christopher took an abbreviated battery of the Stanford-Binet Intelligence Scales - 5th Edition, and received an abbreviated IQ score of 79.  (R. 143.)

In January 2005, an Individualized Education Program ("IEP") issued by the Board of Education indicated that Christopher was receiving speech and language therapy.  (R. 130.)  The IEP ordered speech therapy to continue twice a week and for Christopher to receive Special Education Teacher Support Services five times a week.  (R. 131, 137-38.)  The IEP modified the standard criteria for Christopher's promotion, mandating that Christopher would have to meet sixty percent of the second grade standards for English Language Arts (ELA) and eighty percent of the third grade standards for math to be promoted from third to fourth grade.  (R. 138.)

On June 13, 2006,  Christopher's IEP increased his level of special support, placing him in a special education class on a full-time basis, with a staffing ratio of 12:1:1, because of his "speech-language impairment."  (R. 169.)  The IEP included teachers' assessments of Christopher's functioning.  (R. 171-80.)  The speech-language assessment described Christopher's language delay as "mild to moderate" and described Christopher himself as "pleasant and . . . ready to work."  (R. 171.)  His social and emotional assessor described him as "very pleasant" but with "low frustration tolerance, which sometimes leads to the avoidance of challenges."  (R. 123, 173.)  That assessor also mentioned that Christopher had difficulty with verbal expression.  (R. 173.)  The IEP recommended

that, in addition to his current educational plan, Christopher receive thirty minutes of counseling once a week. (R. 180.) For promotion to fifth grade, Christopher was required to meet sixty percent of third grade standards for ELA and eighty percent of third grade math. (R. 116, 180.)

On November 17, 2006, Christopher's fifth grade teacher Martha Morrison completed a questionnaire on Christopher's overall abilities. (R. 105-12.) She wrote that his reading and writing were at a first grade level, and his math skills were at a second grade level. (R. 105.) She also evaluated his limitations in six domains of functioning.[1] (R. 106-10.) In the domains of acquiring and using information, and attending and completing tasks, Morrison indicated that Christopher had an "obvious problem" or "slight problem" in all listed activities.[2] (R. 106-07.) In the domains of interacting and relating with others, and caring for oneself, Morrison indicated that Christopher had "[n]o problem," except for slight problems in "using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation," and "[b]eing patient when necessary." (R. 108, 110.) Regarding interacting and relating with others, Morrison wrote that she could understand one-half to two-thirds of Christopher's speech on the first attempt and almost all

---

[1]    Each domain incorporated a list of activities to be rated on a scale of one to five, with one being "[n]o problem," three an "[o]bvious problem" and five a "very serious problem." (R. 106-10.)

[2]    Morrison said Christopher had an "obvious problem" in areas including "[r]eading and comprehending written material," "[e]xpressing ideas in written forms," "[l]earning new material," and "[r]ecalling and applying previously learned material." (R. 106.) She said he had a "slight problem" in areas including "[c]omprehending and doing math problems," "[u]nderstanding and participating in class discussions" and "[c]omprehending oral instructions." (R. 106.)

of his speech after repetition and/or rephrasing.  (R. 109.)  She indicated that Christopher had no

problem moving about and manipulating objects.  (R. 109.)   In the health and physical well-being

domain, Morrison did not mention any specific health issues that she was aware of, but she stated

that Christopher frequently missed school due to illness.  (R. 111.)

        In November 2007, Christopher's sixth grade IEP described him as a "bright and

curious student who is social and popular with his classmates" and "a great team player." (R. 277,

279.) The IEP stated that Christopher's writing reflected needs in syntax, grammar and spelling, but

his "fund of knowledge" was "very good." (R. 279.)  The IEP recommended that Christopher

continue speech therapy based on his weakness in "sentence structure and formulation" and "auditory

processing skills." (R. 279.)  The IEP required Christopher to meet twenty percent of the elements

of the sixth grade ELA standard and forty percent of the sixth grade math standard in order to be

promoted to seventh grade.  (R. 286.)  To be promoted from seventh to eighth grade, Christopher

would have to meet twenty percent of the seventh grade ELA standard and forty percent of the

seventh grade math standard.  (R. 286.)

        On February 8, 2008, Christopher's speech teacher, Linda Devassy, and his sixth

grade special education teacher, Stephanie Goldman, completed questionnaires concerning

Christopher's functioning. (R. 288-303.)  Devassy's questionnaire focused on Christopher's speech

and language skills. (R. 288-92.)  Devassy, who administered speech therapy to Christopher in two

forty-five minute sessions per week since September 2007, described Christopher as having

"marked" problems with both receptive language due to his "auditory processing issues," and

expressive language, as evidenced by his "responses to 'WH' questions" and weakness in sentence structure, formulation, and length.  (R. 288-89.)  Devassy stated that those problems resulted in ineffective verbal communication for Christopher's age because his "thoughts, feelings, and ideas come across vague at times." (R. 290.)  She wrote that Christopher "is articulate and speaks well, but has a hard time completing and conveying his thoughts fully." (R. 290.)  In response to questions on the effect of Christopher's language problems on the domains of functioning, Devassy indicated that Christopher's problems in receptive and expressive language led to "marked" problems in the domains of acquiring and using information and of attending and completing tasks.  (R. 290-91.)

Stephanie Goldman completed a Childhood Functional Questionnaire based on her interactions with Christopher as his full-time sixth grade special education teacher.  (R. 293-303.) She indicated that Christopher has an "extreme" limitation in acquiring and using information and difficulty in every individual activity listed within that domain.  (R. 294.)  Goldman indicated that Christopher has difficulty with "[l]earning new material," "[r]eading or comprehending written material," "[c]omprehending generally," "[f]ollowing instructions" and "[e]xpressing ideas." (R. 294.)  She wrote that Christopher "appear[s] to be attending closely," but, on questioning, reveals that he has "no idea of what is being discussed." (R. 294.)  Goldman indicated that Christopher had a "marked" limitation in the domain of attending and completing tasks, stating that "Christopher does not disrupt our lessons, but he often gets off-track and does not know what is happening." (R. 295-96.)  She indicated that Christopher has a  "marked" limitation in the domain of caring for self.  (R. 300.)  She specified that Christopher "often loses his belongings and does not have any idea of where

they are," and that he "play fights" too often, playing the victim.  (R. 299.)  On the other hand,

Goldman stated that Christopher has no limitations in the area of interacting and relating with others.

(R. 296-97.)  In the area of health and physical well-being, she stated that she was unfamiliar with

Christopher's specific health issues, which do not present at school, but that he is "too frequently

absent" due to health issues.  (R. 302.)

**Medical Evidence**

On September 26, 2006, the Child and Adolescent Psychiatric Evaluation Service

("CAPES") at the New York State Psychiatric Institute evaluated Christopher.  (R. 182-87.)   The

CAPES evaluators described Christopher as "exceptionally cooperative" but noted his tendency to

fidget and respond impulsively.  (R. 184.) Christopher reported to CAPES that "it is difficult for him

to sit still even while watching television or playing a video game."  (R. 182.)  Gomes reported to

CAPES that Christopher "has had more energy than his peers, tends to talk excessively, and cannot

remain in his seat for even short intervals of time."  (R. 182.)  Gomes also reported, though, that

despite Christopher's "relatively short" attention span and "daydream[ing]," he is able to complete

his homework "without significant parental involvement," and that he "follows directions, pays

attention to details, is well organized, and keeps track of his schoolwork and possessions." (R. 182.)

The CAPES evaluators wrote that "[o]verall, Ms. Gomes endorsed 7/9 symptoms of hyperactivity . . .

and 3/9 symptoms of inattention."  (R. 182.)

CAPES administered two subtests of the Wechsler Intelligence Scale for Children -

Fourth Edition (WISC-IV) to Christopher.  (R. 184.)   On the perceptual organization subtest,

Christopher's score was in the average range.  (R. 184.)  On the verbal skills and verbal knowledge subtest, his score was in the low average range.  (R. 184.)  Christopher also took the Wechsler Individual Achievement Test - Second Edition.  (R. 184.)  He performed in the average range on the numerical operations subtest, but performed in the "borderline" range in reading comprehension and spelling.  (R. 184-85.)

CAPES had Gomes and Christopher's fifth grade teacher complete standardized reports comparing Christopher to other children his age.  (R. 185.)  Gomes' responses placed Christopher in the borderline clinical range in the Attention Deficit/Hyperactivity scale.  (R. 185; see also R. 248-51.)  His teacher's responses placed him in the normal range for the Inattention and Hyperactivity subscales, but his teacher expressed that it was too early in the school year for her to accurately assess Christopher's behavior.  (R. 185.)  Christopher's teacher did indicate her perception that Christopher had issues with "inattention, daydreaming, failure to finish assignments, and impaired concentration."  (R. 185.)

The Conners' Parent Rating Scale suggested that Christopher was "'at risk'" of an ADHD diagnosis based on his mother's responses that he has problems sitting still and is restless and impulsive.  (R. 185.)  The CAPES evaluators found that Christopher's cognitive skills were "varied," spanning from the "average to low average range."  (R. 185-86.)   The evaluator  noted "[s]ubtle articulation difficulties" in Christopher's speech.  (R. 185.)  Based on the results of Christopher's evaluation, CAPES diagnosed Christopher with ADHD, predominately Hyperactive-Impulsivity Type, and Mixed Receptive-Expressive Language Disorder.  (R. 186.)  In a summary of their overall

findings, the CAPES evaluators wrote that hyperactivity and impulsivity "impair Christopher's ability to integrate and retain information," and thus ADHD treatment would likely improve Christopher's academic achievement.  (R. 186.)

On September 28, 2006, Dr. Karen Prowda reviewed the medical evidence and evaluated Christopher on behalf of the Social Security Administration.  (R. 191-96.)   Dr. Prowda found that Christopher's limitation in acquiring and using information was "marked," that he had a "less than marked" limitation in attending and completing tasks, and that he had "no limitation" in interacting and relating with others, moving and manipulating objects, caring for himself, or health and physical well-being.  (R. 193-94.)   Finding a marked limitation in only one of the six domains, Dr. Prowda concluded that Christopher's impairment is severe, but does not meet, medically equal, or functionally equal the listings of disabilities. (R. 191, 195.)

On December 8, 2006, Speech-Language Pathologist Avraham Goldstein evaluated Christopher.  (R. 188-90.)  Goldstein found that Christopher's articulation, voice, and fluency to be "within normal limits."   (R. 189.)   He administered the Clinical Evaluation of Language Fundamentals-4 (CELF-4) test to assess Christopher's ability to follow directions, repeat spoken sentences, formulate complete sentences and identify relationships between words.  (R. 189-90.) Christopher's results revealed his "receptive and expressive language skills to be significantly below normal limits." (R. 189.) Based on Christopher's test results, Goldstein concluded that Christopher had "[s]evere receptive and expressive language disorder" and recommended speech and language therapy. (R. 190.)

On March 12, 2007, Dr. Linda Freeman of the Northside Center for Child Development diagnosed Christopher with ADHD, Hyperactivity-Impulsivity Type, and prescribed Concerta for Christopher at eighteen milligrams.  (R. 258, 259-60, 263.)  On April 9, 2007, Dr. Freeman increased Christopher's Concerta dosage to twenty-seven milligrams.  (R. 261.)  On April 12, 2007 Dr. Freeman listed Christopher's diagnoses as "ADHD; combined type" and expressive and receptive language delays. (R. 262.)  Dr. Freeman described Christopher as "polite" and "motivated for treatment," but listed his weaknesses as "[h]yperactiv[ity]" and "poor impulse control."  (R. 269.)  On June 11, 2007, Dr. Freeman again described Christopher's ADHD as "Hyperactive-Impulse Type," and continued his twenty-seven milligram prescription.  (R. 267.)

On July 12, 2007, Dr. Freeman reported that Christopher "has become non-compliant to treatment appointments," having missed twice as many appointments (six) as he attended (three). (R. 268.)  On August 15, 2007, the Northside Center discharged Christopher as a patient for repeatedly missing appointments. (R. 273.) In Christopher's discharge summary, Dr. Freeman wrote that Christopher had demonstrated "some difficulty remaining on task," but that he was "able to respond" to the therapist's "re-direction."  (R. 273.)  Dr. Freeman described Christopher's overall progress over the course of treatment as "[m]inimal." (R. 273.)

**The ALJ's Decision**

On April 24, 2008, ALJ Hecht issued a written decision denying Lynnel Gomes' application for SSI benefits for Christopher.  (R. 4-20.)

ALJ Hecht performed the three step test for determining disability as follows:  At the first step,  ALJ Hecht found that Christopher was not gainfully employed at any time relevant to the decision.  (R. 8, 10.)  At the second step, ALJ Hecht found that Christopher's "long history of speech and language delays" and his diagnosis of ADHD constituted a "severe combination of impairments." (R. 8, 10.)  At the third step, ALJ Hecht found that neither Christopher's speech and language delays nor his ADHD "meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," and that Christopher "does not have an impairment or combination of impairments that functionally equals the listings."  (R. 8, 10-11.)

In analyzing whether Christopher's impairment functionally equaled the listings, ALJ Hecht gave "significant" weight to Christopher's speech teacher's opinion of Christopher's speech and language issues, but little weight to her opinions not pertaining to speech and language (i.e., her opinion that Christopher had a marked limitation in attending and completing tasks), since she saw him only twice a week.  (R. 13-14.)  ALJ Hecht also relied on Christopher's fifth grade teacher Morrison's opinion because she had regular contact with him and "objective medical evidence" supported her opinion.  (R. 13.)  ALJ Hecht discounted Christopher's sixth grade teacher Goldman's conclusion that Christopher had an "extreme" limitation in acquiring and using information because that conclusion "really related to [Christopher's] ability to attend and complete tasks."  (R. 14.)  He also discounted several of Goldman's conclusions as inconsistent with the medical record.  (R. 14.)  ALJ Hecht gave significant weight to the medical record and to those non-medical opinions supported by the medical record. (See R. 13-14.)

ALJ Hecht evaluated the extent of Christopher's limitations in each of six domains of functioning, finding that Christopher had a "marked limitation" in the domain of acquiring and using information, a "less than marked limitation" in attending and completing tasks, and "no limitation" in interacting with others, moving about and manipulating objects, caring for himself, or health and physical well-being. (R. 15-19.) Because ALJ Hecht determined that Christopher had no extreme limitations and a marked limitation in only one domain, he concluded that Christopher's impairment did not functionally equal the listings, and Gomes' "statements concerning the intensity, persistence, and limiting effects of [Christopher's] symptoms [were] not credible to the extent that they [were] inconsistent" with that finding. (R. 11, 20.) Accordingly, ALJ Hecht determined Christopher not to be disabled within the meaning of the Social Security Act since September 28, 2006, the date the application was filed. (R. 7, 20.)

ALJ Hecht's decision became the final decision of the Commissioner when the Appeals Council denied review on November 7, 2008. (R. 1-3.)

## ANALYSIS

### I.      THE APPLICABLE LAW

#### A.      Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record to support such determination. E.g., Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 127 S. Ct. 2981 (2007); Halloran v. Barnhart 362 F.3d 28, 31 (2d Cir. 2004), Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Green-

Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); 42 U.S.C. § 405(g).[3/]  "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'"  Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002).[4/]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[5/]  "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the

---

[3/]     See also, e.g., Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Vapne v. Apfel, 36 Fed. Appx. 670, 672 (2d Cir.), cert. denied, 537 U.S. 961, 123 S. Ct. 394 (2002); Horowitz v. Barnhart, 29 Fed. Appx. 749, 752 (2d Cir. 2002); Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983); Rodriguez v. Barnhart, 03 Civ. 7272, 2004 WL 1970141 at *8 (S.D.N.Y. Aug. 23, 2004), aff'd, 163 Fed. Appx. 15 (2d Cir. 2005).

[4/]     See also, e.g., Duran v. Barnhart, 01 Civ. 8307, 2003 WL 103003 at *9 (S.D.N.Y. Jan. 7, 2003); Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review.") (quotations & alterations omitted).

[5/]     See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Green-Younger v. Barnhart, 335 F.3d at 106; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Curry v. Apfel, 209 F.3d at 122; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983). The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[6/] However, the Court will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Garner v. Astrue, 08 Civ. 6367, 2009 WL 903742 at *9 (S.D.N.Y. Apr. 7, 2009) (Peck, M.J.); Johnson v. Astrue, 563 F. Supp. 2d 444, 453 (S.D.N.Y. 2008); Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

### B.     The Applicable Legal Standard for Determining Disability of a Child

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "PRWORA"), Pub. L. No. 104-193, 1996 U.S. Code Cong. & Admin. News (110 Stat.) 2105, a disability exists for purposes of SSI benefits if a child under the age of eighteen:

> [1] has a medically determinable physical or mental impairment, [2] which results in marked and severe functional limitations, and [3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . [however,] no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

---

[6/]     See also, e.g., Colling v. Barnhart, 254 Fed. Appx. 87, 88 (2d Cir. 2007); Veino v. Barnhart, 312 F.3d at 586; Toles v. Chater, No. 96-6065, 104 F.3d 351 (table), 1996 WL 545591 at *1 (2d Cir. Sept. 26, 1996).

42 U.S.C. § 1382c(a)(3)(C)(I)-(ii); see, e.g., Encarnacion v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009);

Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004); Encarnacion v. Barnhart, 331 F.3d 78, 84 (2d

Cir. 2003); Marchado v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Quinones v. Chater, 117 F.3d 29,

33 n.1 (2d Cir. 1997).

        The implementing regulations provide a three-step process for determining eligibility.

20 C.F.R. § 416.924(a).[7/]  In the first step, the ALJ must determine whether the child is engaged in

substantial gainful activity.  20 C.F.R. § 416.924(b).  If so, there can be no finding of disability.

20 C.F.R. § 416.924(a)-(b).[8/]  If not, the analysis proceeds to step two, which requires the ALJ to

determine whether the child has a medically determinable, severe impairment or combination of

impairments.  20 C.F.R. § 416.924(c).[9/]  If the impairment(s) constitutes a "slight abnormality or a

combination of slight abnormalities that causes no more than minimal functional limitations," the

child will not be found to have a severe impairment.  20 C.F.R. § 416.924(c); see also, e.g.,

Encarnacion v. Astrue, 568 F.3d at 75.  If there is a finding of severe impairment, however, the

analysis proceeds to step three, which requires the ALJ to determine whether the impairment(s)

---

[7/]    See, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84; Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *9 (S.D.N.Y. Apr. 21, 2005) (Peck, M.J.) (& cases cited therein).

[8/]    See also, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84.

[9/]    See, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84.

meet, medically equal, or functionally equal the listings.  An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment listed in the listing [of Impairments in appendix 1 of subpart P of part 404 of this chapter], or if it functionally equals the listings.

20 C.F.R. § 416.924(d).[10/]   If this equivalency test is satisfied, and the statute's durational requirement is satisfied as well, then the child will be found to be disabled.   20 C.F.R. § 416.924(d)(1).  Otherwise, he will not.  20 C.F.R. § 416.924(d)(2).

To "functionally equal the listings," an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).[11/] A "marked limitation" is one where the "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); see also, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190.  An "extreme" limitation is one where the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i); see also, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190.

The six functional domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating

---

[10/]   See also, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84.  "SSA amended its regulations again, effective January 2, 2001, to essentially eliminate medical equivalence proceedings and to analyze all children under a functional equivalence rubric." Encarnacion v. Barnhart, 331 F.3d at 84 n.3.

[11/]   See also, e.g., Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190; Encarnacion v. Barnhart, 331 F.3d at 84-85.

objects; (v) Caring for yourself; and, (vi) Health and physical well being."   20 C.F.R. § 416.926a(b)(1); <u>see also</u> <u>id</u>. § 416.926a(g)-(l); <u>Encarnacion</u> v. <u>Astrue</u>, 568 F.3d at 75; <u>Pollard</u> v. <u>Halter</u>, 377 F.3d at 190; <u>Encarnacion</u> v. <u>Barnhart</u>, 331 F.3d at 84 & n.4.

## II.    APPLICATION OF THE LEGAL STANDARD TO PLAINTIFF'S CLAIM

Because the ALJ found that Christopher never engaged in a substantial gainful activity and that Christopher had severe medically determinable impairments of ADHD and speech and language delays (<u>see</u> page 14 above), Christopher satisfied the first and second requirements of the three-part test.  The Court therefore must determine whether substantial evidence supports ALJ Hecht's conclusions that Christopher's impairments are not functionally equivalent to an impairment listed at 20 C.F.R., part 404, subpart P, appendix 1.  Mental disorders, the category of impairments closest to Christopher's impairments, are dealt with in Sections 12.00-12.10 of the listings of impairments.

This Courts's review of the medical impairment listing at 20 C.F.R. Pt. 404, Subpt. P, App. 1, including Sections 12.00-12.10, finds no impairment medically equivalent to Christopher's impairments.  Therefore, ALJ Hecht was correct to conclude that Christopher did not have a medically equivalent impairment.  The next issue is whether Christopher's impairments were functionally equivalent to an impairment listed at 20 C.F.R., part 404, subpart P, appendix 1.

As noted above, to support a finding of functional equivalence, Christopher's impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).[12]

A marked limitation is one that is "more than moderate" and "less than extreme" and "interfere[s] seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); see, e.g., Encarnacion v. Astrue, 568 F.3d at 75. Although "[n]o single piece of information taken in isolation can establish whether [a child] has a 'marked' . . . limitation in a domain," 20 C.F.R. § 416.926a(e)(4)(i), a marked limitation will be found when a child scores "two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii).

An extreme limitation exists if the "impairment interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i); see also, e.g., Encarnacion v. Astrue, 568 F.3d at 75. Although, as with marked limitations, "[n]o single piece of information taken in isolation can establish whether [a child] has an . . . 'extreme' limitation in a domain," 20

---

[12]    See also, e.g., Encarnacion v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009); Pollard v. Halter, 377 F.3d 183, 190 (2d Cir. 2004); Encarnacion v. Barnhart, 331 F.3d 78, 84-85 (2d Cir. 2003); Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *9 (S.D.N.Y. April 21, 2005) (Peck, M.J.) (& cases cited therein).

C.F.R. § 416.926a(e)(4)(i), an extreme limitation will be found when a child scores "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

Six broad areas of functioning must be assessed:  "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being."  20 C.F.R. § 416.926a(b)(1); see also cases cited at pages 19-20 above.  The ALJ reviewed the evidence as to all six broad areas and found that Christopher has a marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, and no limitations in the domains of moving about and manipulating objects, interacting with others, caring for himself  or health and physical well-being.  (See page 15 above.)  In making this determination, the ALJ was required to consider "all of the relevant evidence in the record, including:  (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and . . . experience." DeLeon v. Apfel, 00 Civ. 3701, 2000 WL 1873851 at *8 (S.D.N.Y. Dec. 21, 2000) (Peck, M.J.) (internal quotations omitted).[13]

---

[13]    See also, e.g., Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988); Morgan v. Barnhart, 2005 WL 925594 at *12; Morel v. Massanari, 01 Civ. 0186, 2001 WL 776950 at *5
(continued...)

The ALJ met these standards in evaluating Christopher's claim.  The Court turns to the two relevant of the six areas of functioning: acquiring and using information and attending and completing tasks.[14]

## A.   **Acquiring and Using Information**

The regulations describe acquiring and using information specific to age groups, including "school-age children" (ages six to twelve), which is the age group for Christopher at the claimed onset of his disability.  20 C.F.R. § 416.926a(g)(2)(iv).  Children in this age group "should be able to learn to read, write, and do math, and discuss history and science."  20 C.F.R. § 416.926a(g)(2)(iv).  Examples of limited functioning include:  (1) inability to "demonstrate understanding of words about space, size, or time"; (2) inability to demonstrate rhyming skills;

---

[13]   (...continued)
(S.D.N.Y. July 11, 2001) (Peck, M.J.) (& cases cited therein).

[14]   The other four domains of functioning are not at issue.  The ALJ found no limitations in the areas of moving about and manipulating objects, interacting with others, caring for yourself, or health and physical well-being.  (See page __ above.)  There is nothing in the record to support a finding that Christopher was limited in any of these areas, nor does plaintiff's counsel claim that Christopher suffers from such limitations.  (See Dkt. No. 12: Gomes Br. at 18-29; Dkt. No. 17: Gomes Reply Br. at 2-10.)  With respect to Christopher's health and physical well-being, Christopher's mother testified that he has "bicuspid heart valve" and asthma, but there are none of the "significant, documented symptoms or signs" required by the regulations.  20 C.F.R. § 416.926a(e)(2)(iv).

The Court does not agree with plaintiff's counsel's assertions that ALJ Hecht committed "errors of law that require a remand" nor that he failed to develop the record by failing to order more standardized tests.  (Dkt. No. 12: Gomes Br. at 17-29; Dkt. No. 17: Gomes Reply Br. at 1-10.)

(3) "difficulty recalling important things you learned in school yesterday"; (4) "difficulty solving mathematics questions or computing arithmetic answers"; and (5) ability to "talk only in short, simple sentences." 20 C.F.R. § 416.926a(g)(3)(i)-(v).

ALJ Hecht found that Christopher's impairments caused a marked limitation in the domain of acquiring and using information, based on his speech and language delays and test scores in the low to low average range.  Substantial evidence supports ALJ Hecht's determination.

Christopher's school records indicate that he was markedly limited by his speech impairments.  A psychological evaluator wrote in 2004 that Christopher had difficulty decoding words.  (See page 5 above.) Christopher's June 2006 IEP noted his difficulty with verbal expression.  (See page 6 above.)  Christopher's fifth grade teacher Martha Morrison indicated that he had an "obvious problem" in six out of ten activities in the domain of acquiring and using information, including "[e]xpressing ideas in written form," and a "slight problem" in four out of ten of the activities, including "[c]omprehending oral instructions."  (See page 7 & n.2 above.)  She also noted that Christopher was at a first grade level in reading and writing.  (See page 7 above.)  Christopher's sixth grade speech teacher Linda Devassy described Christopher as having "marked" limitations in receptive and expressive language, which she believed led to an inability to effectively communicate.  (See pages 8-9 above.)  Christopher's fourth grade IEP found his language delay only "mild to moderate."  (See page 6 above.)  Christopher's sixth grade IEP recommended continued speech therapy based on his weaknesses in "sentence structure and formulation" and "auditory processing skills."  (See page 8 above.)

Christopher's medical records and test scores also indicate a marked impairment in acquiring and using information. Christopher scored in the low average range on the verbal skills section of the Wechsler Intelligence Scale for Children, administered by CAPES evaluators at the New York State Psychiatric Institute. (See page 10 above.) On the Wechsler Individual Achievement Test, administered by CAPES, Christopher's scores in reading comprehension and spelling were "borderline." (See page 11 above.) CAPES described Christopher's cognitive skills to span from "average to low average" and found that he had "subtle articulation difficulties" in his speech. (See page 11 above.) Avraham Goldstein, a speech pathologist, administered the Clinical Evaluation of Language Fundamentals test and concluded that Christopher had "[s]evere" language delays. (See pages 12-13 above.) In addition, when Dr. Prowda reviewed the record on behalf of the Commissioner, she found that Christopher's limitation in acquiring and using information was "marked." (See page 12 above.)

The ALJ determined that Christopher had a "marked" limitation, and not an "extreme" limitation, because while Christopher experienced difficulty in expressing himself verbally, his test scores were generally average to low average. (See page 15 above.) Indeed, in her October 2006 Function Report, Gomes herself said that Christopher's ability to communicate was not limited. (See page 3 above.) Gomes' counsel argues that the ALJ placed too great of an emphasis on Christopher's test scores, failing to sufficiently address evidence suggesting an extreme limitation in the domain. The record makes clear, however, that ALJ Hecht accounted not only for Christopher's test scores, but also for the evaluations done by Christopher's teachers and doctors which often emphasize

Christopher's relative strengths in expressing himself.  (See page 14 above.)  Christopher's most recent IEP from 2007 stated that his writing reflected weaknesses in syntax, grammar and spelling, but that his "fund of knowledge" was "very good."  (See page 8 above.)  Christopher's speech and language assessment attached to his 2006 IEP noted his verbal impairment, but described it as "mild to moderate."  (See page 6 above.)  Christopher's overall ability to communicate supports the conclusion that his limitations in acquiring and using information do not interfere "very seriously with [his] ability to independently initiate, sustain, or complete activities" in the domain.  20 C.F.R. § 416.926a(e)(3)(i); accord, e.g., Guzman v. Barnhart, 05 Civ. 6086, 2006 U.S. Dist. LEXIS 94513 at *28-31 (S.D.N.Y. Dec. 29, 2006) (marked limitation in acquiring and using information based on borderline IQ and failing grades in literacy); White v. Barnhart, 409 F. Supp. 2d 205, 208-09 (W.D.N.Y. 2006) (marked limitation in acquiring and using information based on "severe expressive language delays.").

Accordingly, the Court will not disturb ALJ Hecht's determination that Christopher has a marked (but not extreme) limitation in this domain.

**B.    Attending and Completing Tasks**

The regulations define the domain of "[a]ttending and completing tasks" as a child's "ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance."  20 C.F.R. § 416.926a(h)(1)(i).  Children Christopher's age "should be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize [their] school materials, and complete classroom and homework assignments."  20 C.F.R.

§ 416.926a(h)(2)(iv).  Some examples of limited functioning  include:  (1) being "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; (2) being "slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks.  See 20 C.F.R. § 416.926a(h)(3)(i)-(v).

Christopher was diagnosed with and treated for ADHD. (See page 13 above.) Without a doubt, he has some limitation in the area of attending and completing tasks.  The Court's inquiry, however, is not whether Christopher had some limitation, but rather whether there is substantial evidence to support ALJ Hecht's finding that the degree of this limitation was less than marked.  ALJ Hecht based his determination on evidence showing that, despite difficulties in focusing, Christopher is able to do many things independently, is cooperative and responds well to redirection.

Christopher's mother testified at the hearing before the ALJ that Christopher has a hard time sitting still and cannot "do things on his own."  (See page 3 above.)  She said that Christopher is unable to sit still for long periods of time and cannot focus on anything but video games. (See page 3 above.)  She described him as "all over the place," and always "spaced out." (See pages 3-4 above.)  Christopher himself told the ALJ that he sometimes daydreams in school. (See page 5 above.)  Christopher's sixth grade teacher, Stephanie Goldman, said that he "gets off-track and does not know what is happening."  (See page 9 above.)  Dr. Freeman of the Northside Center listed "poor impulse control" as one of Christopher's weaknesses.  (See page 13 above.)

During Christopher's CAPES evaluation, however, Gomes reported that, despite Christopher's tendency to daydream, Christopher  was able to follow directions, pay attention to detail, and do his homework "without significant parental involvement."  (See page 10 above.)  Her responses to the CAPES Standardized Report placed Christopher in the "borderline" clinical range, and her responses to the Conner's Parent Scale questions placed him in the "at risk" range of an ADHD diagnosis, indicating the possibility that he is restless and impulsive.  (See page 11 above.) Dr. Freeman said that, despite Christopher having "some difficulty remaining on task," he was "able to respond" to the therapist's "re-direction."  (See page 13 above.)  Moreover, Gomes reported to Dr. Freeman that Christopher's symptoms had diminished with medication.  (E.g., R. 268.) Christopher's IEPs generally focus on his speech delays and do not specifically discuss his problems with attending and completing tasks, but his 2007 IEP described him as a "bright and curious student" and a "great team player."  (See pages 7-8 above.)

In sum, although Gomes testified that Christopher had significant difficulty focusing, and doctors diagnosed ADHD, there is substantial evidence to support ALJ Hecht's finding that Christopher has only a "less than marked" limitation in attending and completing tasks that does not "interfere seriously with [his] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  (R. 16.)  Accordingly, the Court will not disturb ALJ Hecht's finding that Christopher suffers a less than marked limitation in this area.  See, e.g., Parker v. Comm'r of Soc. Sec., No. 06-CV-711, 2008 WL 4553070 at *8 (N.D.N.Y. Oct. 7, 2008) (less than marked limitation in attending and completing tasks despite ADHD diagnosis); Watson v. Astrue, No. 07-CV-6417,

2008 WL 3200240 at *3 (W.D.N.Y. Aug. 5, 2008) (less than marked limitation in attending and completing tasks despite difficulty focusing and distractibility where claimant is able to be redirected to tasks); Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *14 (S.D.N.Y. April 21, 2005) (Peck M.J.) (less than marked limitation in attending and completing tasks despite ADHD diagnosis and being "easily distracted"); Richardson v. Barnhart, 338 F. Supp. 2d 749, 756, 757-58 (S.D. Tex. 2004) (less than marked limitation in attending and completing tasks despite diagnosis of ADHD and special education in select classes); Duran v. Barnhart, 01 Civ. 8307, 2003 WL 103003 at *11 (S.D.N.Y. Jan. 13, 2003) (less than marked limitation in attending and completing task despite special education and need for "'constant reminders to stay focused' and . . . 'needing to keep [child] on task'").[15/]

---

[15/]   Cf., e.g., Tucker v. Massanari, 99 Civ. 12037, 2001 WL 868031 at *10 (S.D.N.Y. Aug. 1, 2001) (Peck, M.J.) (no marked limitation as to concentration despite child's distractibility); Fernandez v. Apfel, 97 Civ. 6936, 1998 WL 603151 at *13 (S.D.N.Y. Sept. 11, 1998) (Peck, M.J.)  (affirming ALJ's finding that plaintiff was less than moderately impaired in the area of concentration, persistence and pace where ALJ's decision based on "substantial evidence" despite two teachers reports stating that plaintiff was markedly impaired in this domain); Counterman v. Chater, 923 F. Supp. 408, 413-14 (W.D.N.Y. 1996) (affirming ALJ's finding that plaintiff not impaired in the area of concentration, persistence and pace, because "while there was some evidence that [plaintiff] has a short attention span, becomes easily distracted, and needs additional time to complete certain tests, other evidence suggests that her attention and concentration are normal . . . and that [plaintiff] has no trouble being by herself and doing things requiring attention and concentration"); Baker v. Secretary, Dep't of Health & Human Servs., 874 F. Supp. 41, 47 (N.D.N.Y. 1995) (affirming ALJ's finding that plaintiff was not impaired in the area of concentration, persistence and pace where plaintiff engaged in recreational activities and was able to focus on tasks in the classroom and complete some classroom tasks on his own, despite other evidence of concentration weaknesses and need for individualized monitoring in the classroom).

E.      **Conclusion**

The record supports the ALJ's conclusion that Christopher does not suffer from a marked limitation in two of the six broad domains of functioning.  Accordingly, the Commissioner's decision should be upheld.  See, e.g., Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *16 (S.D.N.Y. April 21, 2005) (Peck, M.J.) (no disability when substantial evidence supported ALJ's finding that child does not suffer from marked limitation in two domains); Leach v. Barnhart, 02 Civ. 3561, 2004 WL 99935 at *9-11 (S.D.N.Y. Jan. 22, 2004) (no disability when substantial evidence supported ALJ's finding that child is only "less than marked" in functional domains and therefore "did not have an impairment that functionally equaled the requirements of a listed impairment"); cf. Robles v. Commissioner, 99 Civ. 4248, 2001 WL 194888 at *3 (S.D.N.Y. Feb. 27, 2001) (no disability where child's substantial "delay in language development was the only 'severe' impairment under 20 C.F.R. § 416.924(c)"); Fuller v. Apfel, 96 Civ. 4475, 1998 WL 9402 at *5, 11-12 (S.D.N.Y. Jan. 13, 1998) (severe impairments based on attention deficit disorder, speech and language difficulties and  impaired motor skills not sufficient to establish disability under the Act.).

## CONCLUSION

For the reasons set forth above, the Commissioner's determination that Christopher is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

31

The Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 13) is GRANTED and

Gomes' motion (Dkt. No. 11) is DENIED.

SO ORDERED.

Dated:          New York, New York
                July 10, 2009

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:       Michael D. Hampden, Esq.
                 John E. Gura, Jr., Esq.

H:\OPIN\GOMES